## Commonwealth for Use and Benefit of Lindsey's Administrator et al. v. Deweese et al.

(Decided June 20, 1933.)

BARNES & SMITH for appellants.

WILLIS & HINES, E. N. MAYHUGH and BRATCHER & MOORE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In the year 1810 the General Assembly passed an act creating the county of Butler, chapter 119, Acts 1810, and authorized the justices of peace and assistant judges for the county to fix the permanent seat

of justice on the bank of Green river. Pursuant to this authority, Morgantown was chosen as the county seat. The county is divided by Green river. It was further provided by the act that all the inhabitants on the opposite side of Green river from that on which the courthouse shall be fixed should be privileged on court days and election days to pass the river at any ferry within said county free from paying toll or ferriage fee for the same. By an act approved March 22, 1873, the General Assembly authorized the county court of Butler county, a majority of the justices of the peace being present and concurring, "to establish a ferry on Green River at or near what is called Morrison's Old Ferry near Morgantown, in pursuance of and in compliance with the general law upon the subject of ferries as provided by chapter thirty-nine of the Revised Statutes." Chapter 499, Acts 1873. By another act passed at the same session and also approved on March 22, 1873, the county court of Butler county, a majority of the justices of the peace concurring, was authorized "either to purchase or establish a ferry on Green river in Butler County at such place as it may deem proper." By the same act the county court was given authority to condemn or acquire land to permit ample facilities for the ferry and residence for the ferryman not exceeding 50 acres. The act also contained other provisions not material to this controversy.

Section 8, chapter 39, Revised Statutes 1852, provides:

"Before a ferry right is granted, the applicant shall, with sufficient surety, give a covenant to the commonwealth that he will keep the ferry according to law, and pay all damages that any one may sustain by reason of his failure to do so, or by reason of any neglect or misconduct of those managing the ferry, or by reason of the insufficiency of any boat employed thereat."

There are other provisions to the effect that the surety to be taken on the grant of a ferry right on the Ohio river shall be good for at least $3,000, and anywhere else for at least $500; that every owner of a ferry who shall heretofore have given bond shall enter into such covenant with sufficient surety within six

months after this act takes effect; that every covenant shall be renewed once in five years and oftener, if required by the court; that any person aggrieved may sue at his own costs, and for his own benefit, on such covenant, in the name of the commonwealth; that, when a sale is made of a ferry right, or lease thereof, it must be with leave of the court, and the purchaser or lessee must execute covenant with sufficient surety in lieu of the former covenant; and that, upon failure to comply with any provision of the subsection, the court shall revoke the grant after summons or warning by publication. With certain immaterial exceptions, the foregoing provisions of chapter 39 are sections 1807 and 1808, Kentucky Statutes.

Pursuant to the authority conferred by the Acts of 1873, the county of Butler established a ferry at Morgantown. On October 10, 1930, it entered into a contract employing Troy Deweese as ferryman for one year at a salary of $195 per year. After providing for free ferriage for certain persons, and for machinery and materials belonging to the county, and fixing the ferry rates for those not carried free, the contract contains the following provisions:

"It is further agreed by parties hereto that in no event shall the second party sublease the contract of said ferry, he may, however, employ a ferryman and help, but it shall be his duty at all times to be under the supervision of said ferryman and shall be held responsible for failure to perform his duty. It shall be the duty of the party of the first part to furnish ferry boat suitable to the needs of said ferry, and it shall be the duty of said ferryman to see that it is kept in repairs at all times by notifying the County Judge, whose duty it shall be to see that said boat is kept in good condition. The expense of keeping said boat in repair shall be borne by the County. The County is to furnish only the ferry boat, if the ferryman desires to use other boats, he shall furnish them at his expense. * * *

"At times of high water, the ferryman shall not be held liable for any damages sustained to any passengers unless same was caused by carelessness of said ferryman, but it shall further be

his duty to so inform any person applying for ferriage, and unless said passengers shall be so informed, the ferryman shall be liable as at any other stage of water.

"It shall further be the duty of the said ferryman to furnish sufficient help to properly handle said boat at all times of high water or unusual conditions.

"Now, we, the said Troy Deweese, of the second party and J. W. Martin and Chas. Howard, sureties hereon, undertake to guarantee that the said person will well and faithfully perform all duties encumbered upon him as keeper of said ferry and will hereby undertake to indemnify the said County for all sums that they shall or may sustain by reason of any default upon his part in the penal sum not to exceed a thousand ($1,000.00) dollars."

Relying upon the foregoing contract and statutes, the commonwealth of Kentucky, suing for the use and benefit of W. P. Lindsey, administrator of Tom Lindsey, deceased, brought this action against Troy Deweese and his sureties, Charles Howard and J. W. Martin, to recover damages for the death of Tom Lindsey. Briefly stated, the facts alleged in the petition are these: On April 18, 1931, Tom Lindsey and others were in an automobile which was being ferried across the river by Troy Deweese. After the boat was moored to the bank on the opposite side, the ferryman directed the driver of the automobile to drive it from the ferryboat onto the bank. After the front wheels of the automobile had passed off the ferryboat onto the bank, and while its rear wheels were still on the boat, the boat broke from its moorings and precipitated said automobile, together with the persons then in it, into the river, and Tom Lindsey was drowned. The banks of the river were kept by the ferryman, Troy Deweese, in a dangerous and unsafe condition, and the ferryboat and its appliances were unsafe and dangerous, and the boat was operated by the ferryman in an improper and unskillful way, and with gross negligence and carelessness. The defendants interposed a general demurrer, which was sustained as to the sureties, Charles Howard and J. W. Martin, and, plaintiff having declined to plead further, the petition was dis-

missed as to them. From that judgment this appeal is prosecuted.

In support of the position that the sureties on the ferryman's bond are liable for his negligence, the following argument is made: The county was given the right to establish a ferry "in pursuance of and in compliance with the general law upon the subject of ferries as provided by chapter thirty-nine of the Revised Statutes." By section 8 of that chapter, as well as by the statute in force at the time of the accident, it was provided that, before a ferry right is granted, the applicant shall with sufficient surety give a covenant to the commonwealth that he will keep the ferry according to law, and pay all damages that any one may sustain by reason of his failure to do so, or by reason of any negligence or misconduct of those managing the ferry, or by reason of the insufficiency of any boat employed thereat; that every owner of a ferry shall enter into such covenant with sufficient surety, which shall be renewed once in five years, and oftener, if required by the court, and that any person aggrieved may sue at his own costs, and for his own benefit, on such covenant in the name of the commonwealth; that, when a sale is made of a ferry right or lease thereof, it must be with the leave of the court, and the purchaser or lessee must execute covenant with sufficient surety in lieu of the former covenant; and that these statutes must be read into the bond which the sureties executed. The difficulty we have with this argument, which is pressed with great ability, is that the covenants referred to in the statutes are those required of the applicant, the owner, or lessee of the ferry, and do not apply to the agent through whom the owner or lessee operates the ferry. The county of Butler is the owner, not only of the ferry right, but of the ferryboat and all appurtenances. It did not sell or lease the ferry right to Troy Deweese, but merely employed him as its agent to conduct the ferry. In the circumstances, the statutory requirements as to the covenant to be given by the owner or lessee cannot be read into the bond which Troy Deweese gave to the county. That being true, the liability of the sureties must be measured by the bond which they executed. It is true that the contract provides that the ferryman shall not be held liable at times of high water for damages sus-

tained to any passenger, unless same were caused by carelessness of said ferryman, and that, unless said passenger shall be so informed, he shall be liable as at any other stage of water, and that the sureties undertook that he would well and faithfully perform all duties incumbered on him as keeper of the ferry, but it must not be overlooked that in the same connection this undertaking is followed by the further undertaking "to indemnify the said county for all sums that they shall or may sustain by reason of any default on his part in the penal sum not to exceed a thousand ($1,000.00) dollars." In short, the bond was executed for the sole purpose of indemnifying the county against loss, and it cannot be construed as an undertaking on the part of the sureties to pay damages directly to passengers who may have been injured by the negligence of the ferryman. It follows that the demurrer interposed by the sureties was properly sustained.

Judgment affirmed.